THE PEOPLE v. RODRÍGUEZ.

APPEAL from the District Court of San Juan.

No. 16.—Decided June 29, 1906.

SEDUCTION—SUBSEQUENT CONDUCT OF INJURED FEMALE.—Illicit relations between the defendant and the injured female after the commission of the crime of seduction are of no importance whatever for the purposes of the prosecution, and the crime of seduction is not affected thereby.

ID.—EVIDENCE—PROMISE OF MARRIAGE.—In prosecutions for seduction under promise of marriage it is essential that it definitely appear from the testimony of the prosecutrix that the promise of marriage alone prompted her to submit to the carnal intercourse.

ID.—VERDICT CONTRARY TO LAW AND THE FACTS—NEW TRIAL.—In the case at bar the prosecutrix testified that she did not believe that the defendant would carry out the promise of marriage made to her, and that she did not believe that he would do so because she was poor and he wealthy: *Held*, That under such testimony it cannot be positively stated that the psychological state of the aggrieved woman was such that she submitted to the coition solely under the influence of the seductive deception of the promise of marriage, and that the verdict of guilty found under these circumstances, was contrary to law and the evidence, rendering it necessary that a new trial be granted.

ID.—CORROBORATION OF TESTIMONY OF AGGRIEVED PARTY.—A defendant may be convicted, in a prosecution for seduction, upon the sole testimony of the prosecutrix, without any corroborative evidence whatever, but these same guarantees thrown around the aggrieved woman, require that her testimony shall be frank, definite and sincere, so that she may be justly regarded as the victim of deception.

ID.—WEIGHING THE EVIDENCE—INSTRUCTIONS OF COURT TO JURY.—It is the province of the jury to weigh all the evidence, and under no circumstances, nor in any manner, should it be lead to infer from the words of the judge, what his opinion is as to each of the elements of proof; nor is it lawful to suggest anything to it which may tend to divert its judgment of what it honestly believes to be just and impartial.

ID.—The jury, as the sole judge of the evidence, must weigh it and conscientiously decide what it may deem just, without any suggestions which may disturb it in finding its verdict.

ID.—The court characterized the practice followed by the trial judge in this case as improper in instructing the jury as follows: "You, as I have already told you, are the judges of the credibility of the witnesses. Consider carefully the testimony of the aggrieved party, of that poor girl said to be at the present time the concubine of the defendant and who, in testifying, appears to be in a terrible struggle between two conflicting sentiments, that of telling the truth before a court after having taken an oath, and that of reflecting that upon her testimony he who was the object of her most intense love may possibly have to go to the penitentiary."

ID.—INFORMATION.—In an information for seduction it should be stated that the seduced female is an unmarried woman, as it is so required by the law, but where no objection is made to the information in due time on this ground, and the information fulfills the requirements of section 82 of the Code of Criminal Procedure, the same will be held to be sufficient.

ID.—The words "a young girl" employed in an information for seduction, instead of the words "an unmarried woman" used by the Penal Code in defining the crime, are synonymous for the purposes of the validity and sufficiency of the information.

The facts are stated in the opinion.

*Mr. Benítez Castaño* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

This cause was begun by the filing of the following information:

"Salustiano Rodríguez is accused by information filed by the *fiscal,* of the crime of seduction, a felony, committed as follows:

"The said Salustiano one day in the month of October or November, 1904, in the *barrio* of Mameyes, Río Grande, which forms part of the judicial district of San Juan, seduced, under promise of marriage,

Pía Cabrera, a young girl of chaste character, with whom he had maintained amorous relations, having sexual intercourse with her.

''This act is contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico.—Signed, Luis Campillo, district *fiscal*.

''The above information is based upon the sworn testimony of witnesses examined before the judge, and I solemnly believe that there is just cause for the filing of this information.—Signed, Luis Campillo, district *fiscal*.

''Sworn to and signed before me this 20th day of March, 1905.—Signed, José E. Figueras, secretary of the District Court of San Juan.''

The trial was held before a duly constituted jury, which returned a verdict against the defendant of guilty of the crime of seduction, as charged in the information, and the judge of the District Court of San Juan rendered the judgment of conviction on September 20, 1905.

Between this act and the sentence a motion was made for a new trial on the ground that the verdict was contrary to law and the evidence, but the motion was overruled, and on September 23, 1905, after the legal formalities had been complied with, the defendant was sentenced to imprisonment in the penitentiary at hard labor for one year.

From this judgment and the order denying a new trial an appeal was taken to this Supreme Court, the record having been received, which contains, among other matters, a statement of facts and a bill of exceptions, all with the intervention of the *fiscal* and the approval of the judge of the court below.

The appellant also filed a written brief alleging that the defendant should be acquitted or granted a new trial on the ground that no crime exists, in that the information does not set out that the alleged seduced person was an unmarried woman; that grave errors were committed by the judge in his charges to the jury, and that the verdict is contrary to law and the evidence.

These contentions were maintained at the hearing, and were opposed by the *fiscal* of this Supreme Court.

The statement of facts to which we have made reference contains 14 letters addressed by the defendant to Pía Cabrera, the latter's testimony and that of other witnesses.

The letters show that they had sustained an amorous intercourse and the witnesses confined their testimony, some to the previous reputation of the young girl, while others speak of the conditions under which the father and the sister of the young girl are living and make some insinuations with regard to the illicit relations existing between the latter and the defendant.

The last assertions are of no importance, and they cannot *per se* divest of its character the crime of seduction, if it existed.

But it is important for the purposes of the defense and in order to be able to form a proper judgment upon the punishable act which is being prosecuted to consider the testimony of Pía Cabrera, who appears as the aggrieved party.

Before the district court and the jury which tried this case she made the following statement:

"*Testimony of Pía Cabrera.*—She replied to the *fiscal*: That her name is Pía Cabrera, 19 years of age, residing in Mameyes; that she knew Salustiano Rodríguez; that she had sustained amorous relations with him for three years more or less; that she lived with her father, who had denounced the act; that Salustiano Rodríguez had seduced her under promise of marriage; that he had promised to marry her, but that she had not believed him; that it was due to the promise that something happened between them; that what occurred took place in her house, at night time, he having entered the room in which she slept, with her foster sister Claudina; that the latter knew nothing of it because she was asleep; that he had sexual intercourse with her on a number of occasions, and that as a consequence thereof she had had a child; that her father learned of the act because the mistress of the house, Ezequiela Díaz, had noticed that she was *enceinte,* and had told her father; that he took steps to meet Salustiano; that she had given herself to Salustiano because she loved him very much; that he had long ago made her the promise of marriage; that he made it after she had given herself to him; that he had spoken to her before and had promised to marry her, as the letters must show; that she has

no occupation outside of her household duties. Replying to counsel for the defendant she said that their amorous relations were interrupted in the year 1903; that they were at odds for six months more or less; that when they resumed their relations, Salustiano verbally offered to marry her; that he only said that he would marry her; that she had not believed in the promise; that she had given herself to him because she loved him greatly and because she believed that by so doing she assured her marriage; that the same understanding exists between them as before; that she loves him still; that her sister lives in the house with her man; that her father is married and lives with Ezequiela Viera, and that they all live together.

"Replying to the *fiscal* she said: That the relations still continue; that they meet in her sister's house, with the latter's consent, and that she knew of the charge.

"Replying to the judge: That her relations with the defendant consist in visiting and talking to each other; that she believed that by giving herself to Salustiano, he would marry her; that he had said he would marry her; that she loved him very much; that when she first had relations with him, she desired to become his wife; that before the breaking off of their relations he had promised to marry her; that upon the resumption of relations he once told her so verbally; that the relations were broken off by reason of insignificant lovers' quarrels; that he has gone to see her since the filing of the information; that she has not thought of the consequences of the information; that she still loves him; that she had not thought that he would go to jail; that they have not spoken of the information. To counsel for the defendant, who asked her: When Salustiano Rodríguez made you the verbal promise to marry you after that withdrawal, did you believe that he would keep his promise of marriage? she replied, 'No, sir.'

"Replying to the judge she said that she did not have faith, because she was poor and he rich; that she had never given herself to another man; that she had never had relations with any other man; that he had been the only man she had loved."

Section 261 of the Penal Code reads as follows:

"Every person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment in the penitentiary for not more than five years, or by a fine of not more than $5,000 or by both such fine and imprisonment."

This testimony raises in our mind such grave doubts that it is impossible for us to determine positively as to whether the promise of marriage alone was what prompted the girl to perform the carnal act.

That testimony does not appear ingenuous and frank, but is, on the contrary, vacillating and sometimes rather contradictory upon the point of the promise of marriage in relation to the sexual intercourse.

A promise is but the stratagem, the cunning which constitutes the plot, the deception practiced gently to induce to the commission of the evil, which in this case is the sexual intercourse to which a young unmarried woman, theretofore considered chaste, yields without thinking of the consequences and prompted solely by the firm belief that the promise of marriage made to her, which solves the problem of her union to the man she loves, will be kept.

It does not appear clearly from the testimony we are analyzing that she has been seduced; that is to say, that she had been gently persuaded to commit the evil under the promise of marriage.

She asserts that she did not believe in that promise and she explains further that she did not believe it because she was poor and he wealthy, and under such circumstances reflections of this character which reveal a state of mind capable of cold reasoning are not possible. No; the psychological state in this case must be that of a woman who permits coition solely under the influence of the seduction produced by the deception of the promise of marriage.

We have held that the declaration of the aggrieved party in the crime of seduction with regard to the promise and the sexual intercourse does not require corroborative evidence. See the case of Angel Santos y Santos and that of Higinio Durán, in which Mr. Justice MacLeary and the undersigned delivered the opinions, respectively.

But these very guarantees afforded the seduced girl, require that her statement be frank, firm and sincere, so that we may see in it only the victim of the deception.

And as the testimony of Pía Cabrera is not of this character, we hold that the verdict is contrary to law and the evidence, and that a new trial becomes necessary.

There is no further necessity of considering the other questions raised in the bill of exceptions, inasmuch as we have reached one of the conclusions sought by the defense.

The charges appearing in the record are not signed by the judge of the District Court of San Juan. Such charges are not inserted in full in the bill of exceptions, but the parts thereof inserted must be accepted as authentic, because the judge approved the bill containing them, and among other paragraphs we find therein the following:

"You, as I have already told you, are the judges of the credibility of the witnesses. Consider carefully the testimony of the aggrieved party, of that poor girl, said to be at the present time the concubine of the defendant, and who, in testifying, appears to be in a terrible struggle between two conflicting sentiments, that of telling the truth before a court after having taken an oath, and that of reflecting that upon her testimony he who was the object of her most intense love may have to go to the penitentiary."

The practice observed in this case by the judge of the lower court is not a good one.

It devolves upon the jury to weigh the evidence, and under no circumstances nor in any form should it be permitted to infer from the words of the judge who charged it what his opinion upon each one of the elements of proof is; it is not lawful to suggest anything to it which may tend to divert its judgment of what it honestly believes to be just and fair.

The jury, as the only judge of the evidence, must weigh it and conscientiously decide what it may deem just, without suggestions which may disturb it in rendering its verdict.

Nor does it appear to us to be good practice to omit the

statement in the information that the girl is unmarried. The law requires it, and we believe it proper to mention this fact.

But the information was not excepted to on this point in due time, and it undoubtedly fulfills the requirements of section 82 of the Code of Criminal Procedure.

The words "a young girl" and "an unmarried woman" are synonymous for the purposes of this case, and we must assume that the young girl here in question is unmarried, because, had she been married, the defendant could have proved this fact, which would have constituted a good defense. We so held in the case of *The People of Porto Rico* v. *Francisco Córdova*, in which the opinion of the court was delivered by Mr. Justice MacLeary.

But although we so held, we recommend as good the practice of stating in an information for seduction that the young girl was unmarried, and thus all the requirements of the law in force would be complied with.

Upon the grounds stated, the judgment rendered by the judge of the District Court of San Juan should be reversed and a new trial held in accordance with law.

*Reversed.*

Chief Justice Quiñones, and Justices MacLeary and Wolf concurred.

Mr. Justice Hernández did not take part in the decision of this case.